Jennifer Yu Sacro, SBN: 208988
E-Mail: jsacro@sacrowalker.com
William M. Walker, SBN: 145559
E-Mail: wwalker@sacrowalker.com
Richard D. Bremer, SBN: 199019
E-Mail: rbremer@sacrowalker.com
SACRO & WALKER LLP
700 North Brand Boulevard, Suite 610
Glendale, California 91203
Tel.: (818) 721-9597; Fax: (818) 721-9670

Attorneys for Defendants UNITED STATES LIABILITY INSURANCE COMPANY and MOUNT VERNON FIRE INSURANCE COMPANY



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| XENON INVESTMENT CORPORATION; ROHIT MEHTA; DEEPAK MEHTA;<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES LIABILITY INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 2:24-cv-04630-MRA-MRW<br><br>**DEFENDANT UNITED STATES LIABILITY INSURANCE COMPANY'S AND DEFENDANT MOUNT VERNON FIRE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>DATE: June 16, 2025<br>TIME: 1:30 PM<br>COURTROOM: 10B |

# Table of Contents


I. INTRODUCTION ........ 1

II. PLAINTIFFS IGNORE SEVERAL ELEMENTS AND CONDITIONS OF COVERAGE ........ 2

A. Services Rendered As A Property Manager Or Leasing Agent Are Not At Issue In The Underlying Actions ........ 3

B. The Underlying Actions Do Not Allege Any Wrongdoing By Westside Or Anyone Acting On Westside's Behalf ........ 5

III. PLAINTIFFS' ARGUMENT REGARDING THE "PROFESSIONAL SERVICES" EXCLUSION IS NONSENSICAL ........ 6

IV. THE LANGUAGE OF THE POLICIES' RETROACTIVE ENDORSEMENT DOES NOT REQUIRE ALL WRONGFUL ACTS TO HAVE BEEN COMMITTED BEFORE THE RETROACTIVE DATE ........ 7

V. COVERAGE CANNOT BE CREATED BY WAIVER WITH RESPECT TO THE IH V. VTM ACTION ........ 9

VI. CONCLUSION ........ 10


SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

# TABLE OF AUTHORITIES

**Cases**

*Advanced Network v. Peerless Ins. Co.*, 190 Cal.App.4th 1054 (2010) .................... 9

*Aetna Cas. & Sur. Co. v. Richmond*, 76 Cal. App. 3d 645 (1977) .................... 9

*Bank of California, N. A. v. Opie*, 663 F. 2d 977 (9th Cir. 1981) .................... 4

*Horizon West, Inc. v. St. Paul Fire & Marine Ins. Co.*, 214 F. Supp. 2d 1074 (E.D. Cal. 2002) .................... 4

*Legacy Partners, Inc. v. Travelers Indemnity Co. of Illinois*, 83 Fed. Appx. 183 (9th Cir. 2003).................... 5, 6

*PMI Mortgage Ins. Co. v. American Int'l Specialty Lines Ins. Co.*, 394 F. 3d 761 (9th Cir. 2005) .................... 4

*Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800 (1982) .................... 3

**Statutes**

Cal. Civil Code § 1641 .................... 5

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Motion for Partial summary Judgment (ECF No. 39; the "Motion") is based on a selective reading of the property managers professional liability coverage issued by Defendants United States Liability Insurance Company ("USLI") and Mount Vernon Fire Insurance Company ("Mount Vernon"). Plaintiffs must resort to this tactic because their argument suffers from a fundamental and fatal flaw – that the underlying actions for which they seek coverage have ***nothing*** to do with either the named insured under the policies (Westside Habitats LLC, referred to herein as "Westside") or the **Professional Services** that the policies insure (*i.e.*, services performed by as a property manager or leasing agent). ***No*** entity involved in those actions is alleged to have performed ***any*** services – let alone **Professional Services** – on behalf of Westside, nor do the actions describe any services performed by ***anyone*** – let alone on behalf of Westside – as a property manager or leasing agent.

In seeking insurance coverage from Defendants for the unscrupulous and shady acts that the underlying actions allege Plaintiffs committed, Plaintiffs read key provisions out of the policies to try to twist and distort them into extraordinarily broad instruments that would potentially provide coverage for any type of claim of any nature asserted against any entity that could conceivably be insured. Under Plaintiffs' analysis, the only apparent qualifications for a claim to fall within the scope of coverage is that the claim must arise from some services performed by some entity with a tangential relationship to the named insured. As ridiculous as this may sound, it is no exaggeration – Plaintiffs' Motion literally argues for coverage on the grounds that the underlying actions constitute a demand for compensation against Plaintiffs (Motion at 17:23-25) based on their acts in the day-to-day management of various holding companies (Motion at 18:5-10) that have something to do with "property

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

management lines of business" (Motion at 19:17-21 and Plaintiffs' (purportedly) Uncontroverted Fact No. 91).

But Plaintiffs' interpretation ignores controlling provisions of Defendants' policies that describe their scope of coverage – specifically, that coverage is extended for claims arising ***solely*** from the rendering or failure to render services as a property manager or leasing agent, and that arise ***solely*** out of an insured's duties on behalf of Westside – leading to an absurd result.

The underlying actions make ***no*** reference to, or allegation of, ***any*** damage arising out of services performed by or on behalf of Westside, or out of services performed as a property manager or a leasing agent. For coverage to attach under the policies, not only must ***both*** of those aspects be present in the underlying claim, but the claim must ***solely*** arise out of such aspects. Plaintiffs' claim for coverage is not only not in the same ballpark as a potentially covered claim – it is playing another sport entirely.

Accordingly, for the reasons discussed herein (and also discussed in detail in Defendants' own motion for summary judgment, which is set to be heard concurrently with Plaintiffs' Motion), the underlying complaints do *not* create a potential for coverage under Defendants' policies. Plaintiffs' motion must be denied, and Defendants' motion should be granted.

## II. PLAINTIFFS IGNORE SEVERAL ELEMENTS AND CONDITIONS OF COVERAGE

The USLI and Mount Vernon policies at issue in this action have substantially the same terms. All three provide coverage for "**Loss** … that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or if applicable, during any Extension Period, for **Wrongful Acts** of an **Insured** arising solely out of an **Insured's** duties on behalf of the **Named Insured**." [Plaintiff's Statement of Uncontroverted Facts (ECF No. 39-2, the "PUF")

No. 13.] Thus, for coverage to attach, various elements and conditions must be met, including that: (1) a **Claim** must be made against the **Insured**, that (2) is for **Wrongful Acts**, and that (3) arises ***solely*** out of an **Insured's** duties on behalf of the **Named Insured** (which is Westside). As for item (2), for an act or omission to qualify as a **Wrongful Act**, the policies require that the act or omission arise ***solely*** from the rendering or failure to render **Professional Services** [PUF Nos. 18-19], which are defined as services performed in the **Insured's** capacity as a property manager or leasing agent [PUF No. 20].

### A. Services Rendered As A Property Manager Or Leasing Agent Are Not At Issue In The Underlying Actions

Plaintiffs try to gloss over several of these elements and conditions, summarily concluding that because the policies do not define the terms "property manager" or "leasing agent," they are necessarily ambiguous. Motion at 19:8-16. However, Plaintiffs' argument is not in conformance with how contracts are to be interpreted in California. The fact that a term is undefined does not make it ambiguous. Indeed, *most* words used in contracts are not defined. California Civil Code § 1644 provides that such terms are "to be understood in their ordinary and popular sense." Even the authorities relied upon by Plaintiffs in the Motion provide such direction. "Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800, 807 (1982) (citations omitted).

As discussed in greater detail in section IV. B. of Defendants' own motion for summary judgment, the duties of property managers and leasing agents are commonly understood to include such tasks as finding tenants and handling maintenance requests. For example, Investopedia describes a property manager as "an individual or other entity that is hired by a property owner for the purposes of overseeing and

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

managing daily operations of the property or properties," while Wikipedia describes the responsibilities of a property manager as "includ[ing] finding/evicting, dealing with tenants, and coordinating with the owner's wishes." Defendants' Motion for Summary Judgment (ECF No. 38) at 12:9-24. Indeed, Westside's own website is consistent with this understanding, as it lists available properties and fields maintenance requests, but unsurprisingly mentions nothing about investing in or financing such properties – which is what is specifically at issue in the underlying actions. See Declaration of Richard D. Bremer in Support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment (filed concurrently herewith) at Exh. A.

Plaintiffs cite to *PMI Mortgage Ins. Co. v. American Int'l Specialty Lines Ins. Co.*, 394 F. 3d 761 (9th Cir. 2005) and *Bank of California, N. A. v. Opie*, 663 F. 2d 977, 981 (9th Cir. 1981), but completely misunderstand the importance of those cases. Those cases explain that only those tasks undertaken by an insured in their capacity *as a professional* – which here the policies also require be undertaken *in the capacity of a property manager or leasing agent* – are potentially within the scope of **Professional Services**. "To be considered a 'professional service' for insurance purposes, a liability must arise out of the special risks inherent in the practice of the profession." *PMI Mortgage*, *supra*, 394 F. 3d at 766 (internal quotation omitted); see also *Horizon West, Inc. v. St. Paul Fire & Marine Ins. Co.*, 214 F. Supp. 2d 1074, 1078 (E.D. Cal. 2002) (holding that retirement home's submission of Medicare/Medicaid claims, despite their complexity, were not within the scope of the retirement home's professional function and thus were not "professional services"). As explained by the Ninth Circuit in *Opie*, "Something more than an act flowing from mere employment or vocation is essential. … In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself." *Opie*, *supra*, 663 F. 2d at 981 (quotations omitted).

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

Here, the policies provide the further requirement that such services arise ***solely*** from the rendering or failure to services performed in the **Insured's** capacity as a property manager or leasing agent – a requirement that must be given effect. Cal. Civil Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). Plaintiffs are attempting to conflate property management and management of a business that owns property, but these are not the same thing – as evidenced by the common understanding of the terms "property manager" and "leasing agent."

Accordingly, the Policies do not potentially provide coverage to Plaintiffs for the underlying actions.

### B. The Underlying Actions Do Not Allege Any Wrongdoing By Westside Or Anyone Acting On Westside's Behalf

Plaintiffs also argue that the purported fact that Westside is the company through which Plaintiffs operate with respect to their property management business qualifies Plaintiffs for coverage under the policies. Motion at 16:4-11. However, nowhere in the Motion do Plaintiffs address the fact that the underlying actions do not allege any acts or omissions of Westside or anyone acting on its behalf – in fact, neither underlying action mentions Westside at all. Thus, the policies' requirement that a **Claim** for a **Wrongful Act** arise ***solely*** out of an **Insured's** duties on behalf of Westside cannot be satisfied.

Plaintiffs cite to *Legacy Partners, Inc. v. Travelers Indemnity Co. of Illinois*, 83 Fed. Appx. 183 (9th Cir. 2003) for the proposition that Plaintiffs can obtain coverage for the underlying actions even though Westside is not named in either action. Motion at 16:12-23. While it is true that the policies do not explicitly provide that Westside be named as a party in order for coverage to attach, they require that the **Wrongful Act** at issue arise solely out of an **Insured's** duties on behalf of Westside. But the language at issue in *Legacy Partners* was completely different.



SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

There, not only did the policy at issue broadly cover the named insured LPI and any and all "subsidiaries (including subsidiaries thereof), partnerships (limited or general), joint ventures, associations, corporations, trusts, joint tenancies, tenancies in common or other entities or commercial enterprises" of LPI, but endorsements to the policy further extended coverage to "any 'commercial enterprises' in which LPI or Lincoln has a 'proprietary or managerial interest' in conjunction with any one or more Regional Partners." *Id*. at 186. Here the policies at issue contain ***no*** such broad language that would include Plaintiffs as named insureds for all purposes; to the contrary, the coverage is extended only for **Wrongful Acts** arising ***solely*** out of their duties on behalf of Westside. The language of the policies' additional insured endorsements is consistent, as they extend coverage to Xenon Investment Corporation "only as respect to claims arising out of any negligent act, error or omission in the rendering or failure to render **Professional Services** by any individual or entity of the **Named Insured** [*i.e.*, Westside]." [PUF No. 10.]

The plain verbiage of Defendants' policies must be given effect. Because the underlying actions do not allege any **Wrongful Acts** arising solely out of Plaintiffs' duties on behalf of Westside, Plaintiffs' motion must be denied, and Defendants' motion should be granted.

## III. <u>PLAINTIFFS' ARGUMENT REGARDING THE "PROFESSIONAL SERVICES" EXCLUSION IS NONSENSICAL</u>

Plaintiffs' further argument that the "Professional Services" exclusion in Defendants' policies renders coverage illusory is based on an incomplete, false reading of the exclusion. The exclusion in question precludes coverage for "the rendering or failure to render **Professional Services** by any **Insured** as an employee, owner, partner, stockholder, trustee, director or officer of any sole proprietorship, partnership, or corporation or other business enterprise other than the **Named Insured** [*i.e.*, Westside]." [PUF No. 22.] Plaintiffs argue that this exclusion "negate[s] the

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

coverage the Policies provide for 'Professional Services' [because it would] impermissibly require[] that different meanings be given to the same term 'Professional Services' in the Policies." Motion at 22:7-10. To put it bluntly, this argument makes no sense. The exclusion merely bars coverage arising out of **Professional Services** rendered on behalf of an entity other than Westside – no more, no less. By its clear language, the exclusion has no impact on claims arising out of any **Professional Services** rendered by Westside or on its behalf.

Plaintiffs also take issue with Defendants' citation to the exclusion because they claim such citation is inherently in conflict with Defendants' position that the underlying actions do not involve **Professional Services**. But there is no conflict. Instead, Plaintiffs apparently misunderstand Defendants position, which is that while the underlying actions do not involve **Professional Services**, *even assuming purely for the sake of argument that they did*, they do not involve any **Professional Services** rendered by or on behalf of Westside.

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

## IV. THE LANGUAGE OF THE POLICIES' RETROACTIVE ENDORSEMENT DOES NOT REQUIRE ALL WRONGFUL ACTS TO HAVE BEEN COMMITTED BEFORE THE RETROACTIVE DATE

Each of Defendants' policies includes a retroactive date endorsement which provides that Defendants "shall not be liable to make any payment for **Loss** … in connection with any **Claim** made against any **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving a **Wrongful Act**" that was "committed, or alleged to have been committed prior to 05/10/2020." [PUF Nos. 23, 25.]

In the Motion, Plaintiffs argue that because both underlying actions were brought after the retroactive date of May 10, 2020, the retroactive date endorsement does not apply. However, that is not consistent with the language of the endorsement, which requires only that ***a*** **Wrongful Act** – not all **Wrongful Acts** – be alleged to

have been committed before the date in question. Here, to the extent the underlying actions allege any **Wrongful Acts** at all, they allege **Wrongful Acts** that took place ***before*** that date. Specifically, the first amended complaint in the Dorchester Action makes the following allegations:

- On or about November 14, 2012, Dorchester sold I.H. a twelve (12) percent interest in Dorchester for $500,000.00, which was then used to help fund Dorchester's purchase of the [property on Fuller Avenue.]
- Shortly after Plaintiff received its pari passu share of the proceeds of the June 2015 refinance of the Subject Property the principals and managers of BG, individual defendants Rohit and Deepak, began to claim that Plaintiff did not own a membership interest in Dorchester.
- Over the next seven (7) years from 2016 and up to and including March 15, 2022, the parties failed to agree on a buyout amount and complete the purchase of Plaintiff's membership interest.
- Additionally, Defendant Dorchester, through its manager Defendant Rohit, did not provide any financial statements or tax returns from 2016 onwards.

[Exhibit E to Declaration of Katherine A. Tatikian in Support of Plaintiffs' Motion for Partial Summary Judgment (ECF No. 39-12) at ¶¶ 21, 23, 29-30.]

Numerous allegations of the VTM Action also predate the retroactive date:

- I.H. invested $250,000 in VTM Apartments LLC for a 4.46% membership share on or about September of 2011.
- IH Invested $250,000 in BG2 Apartments LLC on or about October 2011 for a 7.16% membership share of BG2 Apartments LLC.
- Between the years 2011-2022, BG 2 and VTM principals and managers, Deepak and Rohit, would forward both companies financials to Plaintiff, including but not limited to profit and loss statements; however, they did not forward yearly tax returns or full and complete K-1's as required by the Operating Agreements of BG2 and VTM.
- Defendants Rohit and Deepak misrepresented both the purchase price and the amount of equity that defendants put into the VTM Apartments LLC when VTM purchased 123 California Avenue Santa Monica [which sale occurred on November 30, 2010].
- Defendants Rohit and Deepak also misrepresented the percentage ownership I.H. was to receive when BG2 Apartments purchased 10670 Sunset Blvd in Pacific Palisades [which sale occurred on April 2, 2013].



SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

[Exhibit I to Declaration of Katherine A. Tatikian in Support of Plaintiffs' Motion for Partial Summary Judgment (ECF No. 39-29) at ¶¶ 23-24, 27, 42, 45.]

To the extent that these acts constitute **Wrongful Acts** in the first place, no coverage is available under Defendants' policies by operation of their retroactive date endorsements.

## V. COVERAGE CANNOT BE CREATED BY WAIVER WITH RESPECT TO THE *IH V. VTM* ACTION

Finally, Plaintiffs argue that Defendants have waived their right to assert coverage defenses with respect to the *IH v. VTM* action because Defendants did not respond to Plaintiffs' tender. While it would have been a best practice for Defendants to have timely responded to Plaintiffs' tender of the *IH v. VTM* action (which Defendants did not do because they mistakenly believed the tender related to the *IH v. Dorchester* action as to which they had already denied coverage), the policies still do not provide coverage to Plaintiffs for the underlying actions for the reasons discussed previously herein and in Defendants' own motion for summary judgment. Under California law, the doctrine of waiver ***cannot*** be used to create coverage under an insurance policy where such coverage did not originally exist because the risks at issue are outside the scope of the insuring agreement or are within the scope of an exclusion. *Aetna Cas. & Sur. Co. v. Richmond* (1977) 76 Cal. App. 3d 645, 652-653 ("The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom…"); see also *Advanced Network v. Peerless Ins. Co.* (2010) 190 Cal.App.4th 1054, 1066 (citing *Richmond*). Because Defendants can have no obligation to defend Plaintiffs with respect to claims that are not potentially covered, Plaintiffs' motion for partial summary judgment must be denied.

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

## VI. CONCLUSION

For all of the reasons discussed herein, and as also discussed in Defendants' own motion for summary judgment, Defendants have no duty to defend Plaintiffs in connection with the underlying actions. Therefore, Defendants respectfully request that this Court deny Plaintiffs' Motion.

DATED: May 19, 2025

SACRO & WALKER LLP

By *\/s/ Richard D. Bremer*
JENNIFER YU SACRO
WILLIAM M. WALKER
RICHARD D. BREMER
Attorneys for Defendants UNITED STATES LIABILITY INSURANCE COMPANY and MOUNT VERNON FIRE INSURANCE COMPANY

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants United States Liability Insurance Company and Mount Vernon Fire Insurance Company, certifies that this brief contains 2,974 words, which:

X complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

DATED: May 19, 2025

SACRO & WALKER LLP

By */s/ Richard D. Bremer*
JENNIFER YU SACRO
WILLIAM M. WALKER
RICHARD D. BREMER
Attorneys for Defendants UNITED STATES LIABILITY INSURANCE COMPANY and MOUNT VERNON FIRE INSURANCE COMPANY

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203